QUINN v. O'NEIL

(March 18, 1929. Opinion and Decree.)

James D. McGovern and Jose A. Morales, of New Orleans, attorneys for plaintiff, appellee.

Daly & Hamlin, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J. This is an action for nullity of judgment, coupled with a suit for the cancellation of an agreement to sell certain real estate. There was judgment below in plaintiff's favor, as prayed for, and defendant has appealed.

On September 27, 1925, James F. O'Neil entered into a contract with Frank P. Quinn, whereby O'Neil agreed to sell and Quinn agreed to buy certain property for the price of $1,100.00.

The agreement stipulated that the act of sale was to be passed "within 45 days." The forty-five days expired without the property having been transferred, and, on November 14, 1925, O'Neil notified Quinn that he had withdrawn the property from the market. On December 4, 1925, Quinn brought suit against O'Neil for specific performance and O'Neil, failing to defend that suit, a judgment as prayed for was rendered against him, by default. This suit followed. The judgment is attacked upon the ground that there was no citation.

O'Neil was served, according to the sheriff's return, at his domicile, No. 1113

Marengo Street, by leaving the citation in the hands of his mother. This citation is said to be fatally defective for the reason that plaintiff resides at 734 Eleanor Street, and not at 1113 Marengo Street, where the domiciliary service was made.

Code of Practice, Art. 189, provides for two forms of service, personal and domiciliary. The domiciliary service "is made at the domicile when the copies of citation and petition are left at the usual place of domicile or residence of the defendant, if he be absent, by delivering them to a person apparently above the age of fourteen living in the house." The Marengo Street residence is the home of plaintiff's mother and sister and was at one time undoubtedly his domicile. The Eleanor Street residence is the home of plaintiff's mother-in-law, the place where his wife and child admittedly reside.

There is considerable testimony in the record, some of which is confusing and inconsistent. For example, plaintiff himself is shown to have given the Marengo Street home on one occasion as his residence. However, the evidence preponderates to the effect that plaintiff lives in Eleanor Street, with his wife and family. There is no suggestion in the record of any marital separation, or estrangement; consequently, the normal and natural place of plaintiff's abode would be with his wife and family, who live in the Eleanor Street home maintained by plaintiff's mother-in-law.

It is clear to our mind that the service was not made at the domicile of plaintiff and is therefore void, and that the judgment based on such citation was properly decreed to be null and of no effect.

As to the demand for rescission of the contract, it is opposed on the ground that plaintiff failed to put the defendant, Quinn, in default.

This defense cannot prevail. Quinn agreed to take title to the property within forty-five days and allowed that period to elapse without doing so. O'Neil notified him on November 14, 1925, two days after the expiration of the time mentioned in the contract, of this withdrawal of his property, thereby insisting upon and not waiving this provision. It is said that the title was not given to defendant's counsel promptly, and that some delay was occasioned on that account, which should be credited against the forty-five days. The record indicates that there was ample time, after the titles were delivered, in which the title might have been examined and the sale consummated. Besides, the act of sale by which plaintiff acquired, usually called the title, was not essential to the examination.

In Gaydan vs. Louisville, N., N. O., & T. Railroad Co., 39 La. Ann. 269, 1 So. 792, where a railroad company agreed to construct a railroad over a right of way within eighteen months, it was held that the failure to complete the road within that time did not prevent the railroad company from doing so later, because "by not insisting at the proper time on that right, and by permitting the grantees to perform their obligation after the delay had expired, grantor has lost the right to be heard to demand the dissolution."

We are of opinion that the failure of Quinn to comply with his obligation to take the property within the forty-five days mentioned in the contract was availed of by O'Neil as a means of avoiding the contract for the sale of this property, which, for some reason, best known to himself, he no longer desired to execute, and that timely notice to that effect was promptly given Quinn, which, if any putting in mora was necessary, served such purpose.

The judgment appealed from is correct and it is, for the reasons herein assigned, affirmed.